JAMES S. FRAZER et al., appellants,

*v*.

PUBLIC SERVICE RAILWAY COMPANY, respondent,*

[Argued March 9th, 1917.  Decided June 18, 1917.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, who filed the following opinion:

The bill of complaint in this case is an injunction bill. It seeks to restrain the defendants from interfering with its street railway on Hamburg Place, in the city of Newark. The allegations of the bill are that prior to August 22d, 1913, the complainant and its predecessors in title were operating a street railway in Hamburg Place, and that on that day the defendants Frazer and Burchenal, as partners, trading as Frazer & Burchenal, entered into a contract with the Passaic valley sewerage commissioners to construct a section of its intercepting sewer longitudinally in Hamburg Place near Avenue L. The contract provided that the work should be done by the method known as the open cut method, which contemplated an open ditch of sufficient width to permit of the removal of the excavated earth and the construction of the sewer at the bottom of the trench. The complainant's railway is alleged by the bill to be a necessary part of its railway system—that it is used by many thousands of people every day, the cars thereon being operated at varying intervals of time from two and a half minutes during a part of the day and every five minutes at other times; of this there is no denial. The tracks lie in the middle of the street and the plan of the construction of the sewer locates it in the middle of the street, but many feet below the surface. On November 21st,

*NOTE.—In *87 N. J. Eq. 679*, the decision in this case was reported. By mistake the oral opinion of Vice-Chancellor Emery was there printed instead of the opinion of Vice-Chancellor Howell, which follows.—REP.

1914, the defendants Frazer and Burchenal wrote a letter to the complainant in which they notified it that in the construction of a portion of said sewer it would be necessary for the complainant's tracks and overhead wires to be removed temporarily for a distance of approximately one hundred and fifty feet at the junction of Hamburg Place and Avenue L, and also to remove a dead-end track east of Avenue L, and, owing to the size of the necessary excavation and the nature of the soil, it would be unsafe to operate cars at that point while the work is being carried on, and claimed that it was the duty of the complainant to remove the wires and tracks aforesaid in order that the work on the sewer might proceed. By the same letter they renewed their offer that if the complainant would promptly remove the tracks and its wires for the required distance at the point mentioned and replace them when the surface of the street should be restored, they would pay the necessary expense thereof if a court of competent jurisdiction or an arbitrator should determine that they were liable therefor, to procure which they would furnish a satisfactory bond, and the complainant was notified that unless it commenced the removal of the tracks and wires on or before the morning of November 25th, 1914, it was their intention to begin the removal of the same, so far as it might be necessary to enable them to proceed with their work. On November 24th, 1914, the bill was filed to restrain Frazer and Burchenal from carrying out their threat to remove the complainant's tracks and overhead wires. On the filing of the bill an order was made requiring these defendants to show cause why an injunction should not issue to restrain them from carrying out their threat, and at the same time the defendants were enjoined until the further order of the court from taking up or in anywise interfering with the railway tracks of the complainant to the extent of any interruption of the operation of the street railway across, thereon or thereover. Upon the return day of this order, or a continuance thereof, argument was had before Vice-Chancellor Emery, and on December 28th, 1914, it was ordered that a writ of injunction should issue against the said Frazer and Burchenal enjoining them from tearing up, disturbing or interfering with the street railway tracks of the complainant in Hamburg Place and Avenue

L, as proposed in the letter above mentioned, but providing that the said defendants should be at liberty to lay a single-track street railway around the proposed open cut for the section of the sewer which they had contracted to construct, such single-track railway to be connected with the railway of the complainant on Hamburg Place north of the proposed excavation, and also with the same railway on Avenue L east thereof, so that the street railway service of the complainant might be maintained during the construction of the said section of the said sewer, and that thereupon the said defendants might remove the tracks of the complainant so far as it should be reasonably necessary to construct said sewer by the open cut method, but that before constructing the single-track railway, and its connections and removing the existing tracks as aforesaid, the said defendants should give to the complainant an opportunity to construct said single track and connections and remove said existing tracks at the expense of the defendants Frazer and Burchenal, and that when said sewer should have been constructed the said single track and connections should be removed and the present tracks of the complainant restored to the location now occupied by them, by the defendants Burchenal and Frazer, provided that the complainant should first be given an opportunity by the said defendants to remove the single track and connections and restore the present tracks at the expense of the said defendants, and that the said defendants before removing or disturbing the tracks of the complainant should give a bond to the complainant in the sum of $4,000, with surety, conditioned for the payment of the cost of said work, if done by the complainant. The said order further provided that all proceedings in relation to the matter should be considered as made and taken under the provisions of the said order which it stated was made for the purpose of regulating and controlling *pendente lite* the use and possession of the public street for the constructing of the sewer by the open cut method, interfering only so far as should be reasonably necessary with the public travel on the complainant's present line of railway, and that such action or payment under this order should be without prejudice to the final determination of the contractors' liability to such extent as against either the com-

plaimant or Passaic valley sewerage commissioners or to their right on such final determination to claim and demand the repayment or reimbursement of the same from either the complainant or the said commissioners or their right to be relieved from any obligation given to .complainant by bond or otherwise to secure the complainant for the payment of such expense; and leave was given to all the parties to apply to the court from time to time for further orders and directions.

The single track for the accommodation of the complainant's business, as provided for in said order, was constructed by the complainant, was used by it until the completion of the said section of the sewer, which was in or about September, 1915. The work of restoring the complainant's tracks to their former condition and situation is finished, and, as I understand the fact, the total expense of both displacing and restoring tracks has been paid by the complainant.

It, therefore, appears that the present controversy is over the question who shall pay for the removal and restoration of the complainant's street railway at the point in question. The decision of this point requires an examination into the rights, duties and obligations of the several parties to the transaction.

There is nothing in the case to show when or by what means the complainant obtained the right to lay tracks and prosecute its business in Hamburg Place, nor is there anything to show the extent, duration or character of any such right as it may possess. I shall assume, however, inasmuch as no question is made about it, that the complainant is lawfully in possession of the portion of the street occupied by its tracks, and that it has a right given to it by some paramount authority to operate its railway over the said tracks, and that it has such rights and franchises for its purposes in the said street as give it a standing to file the present bill.

The defendants Frazer and Burchenal derive all their rights in the street from the contract of August 22d, 1913, hereinbefore referred to, made between them and the Passaic valley sewerage commissioners, and the commissioners derive all their rights from two statutes, the first one being *P. L. 1903 p. 158*, and the other being *P. L. 1907 p. 22*. By section 7 of the act of 1903

said commissioners were given power to construct any sewer or drain by it to be made or constructed under or over any waters, course, under or over or across or along any street, turnpike, railway, canal, highway or other way, and in or upon private or public lands, and in or upon lands of the state and under water of the state, in such manner, however, as not unnecessarily to obstruct or impede travel or navigation, and may enter upon and dig up any street, road, highway or private or public lands, either in or without the said sewerage district, for the purpose of constructing or laying sewers or drains upon or beneath the surface thereof, and for maintaining and operating the same, and in general may do all acts or things necessary, convenient and proper to carry out the purposes of this act.

By section 5 of the act of 1907 the commissioners were given power to construct an intercepting sewer or sewers and the necessary appurtenances thereto to the point or points of discharge and disposal determined by said contract, and for this purpose to pass through or partly through territory situated within the bounds of any other municipality than those contracting with it for the construction of said work, and full power to construct such intercepting sewer or sewers and its appurtenances along, over and under any water course or under or over or along or across any street, turnpike, road, railroad, highway or other way or public park or grounds, and in or upon private or public land under water; in such way and manner, however, as not necessarily (unnecessarily?) to obstruct or impede travel or navigation, and to enter upon or dig up any street, highway or private or public land for the purpose of constructing said work and appurtenances, and for repairing and maintaining the same, and in a general way to do all other acts and things necessary, convenient and proper in connection with the making and maintaining of the improvement contemplated by the act, and that the highways dug up and disturbed should be restored to their former condition as near as might be.

It is difficult to conceive a broader grant of powers or a more specific designation of the particular things which the state in its sovereign capacity has authorized these commissioners to do. The authority of the commissioners to act in the premises and

to employ agents to carry out its purposes and plans, such as the defendants Frazer and Burchenal, is not disputed or even questioned. The complainant admits all that is claimed for the power of the state to construct underground sewers in streets which are already occupied by private individuals and corporations exercising the franchises for the benefit of the public. They admit that under the present legislation on the subject the state by its municipal agencies has the right to construct the sewer in question or authorize its construction by all means in its power; but it claims that the state agency in performing the work has exceeded the authority and power committed to it, in that it has attempted to violate, and has violated, the single limitation upon its power, that limitation being a requirement that it shall not unnecessarily obstruct or impede travel. I think there can be no doubt about what is meant by the word "travel." It includes all the methods ordinarily in common use by which people on foot and with horses, wagons and power trucks may traverse Hamburg Place or other public streets of the state. It certainly includes travel by means of the street cars operated by the complainant over its tracks in the last-named street (*Hendry* v. *North Hampton, 72 N. H. 351; 56 Atl. Rep. 922*), and the question is, therefore, whether the method of building the sewer adopted by the commissioners and fastened upon the defendant contractors by their contract is or is not an unnecessary obstruction to travel. Vice-Chancellor Emery, in the opinion written by him on the decision of the motion for a preliminary injunction, interpreted the word "necessarily" according to one of its milder meanings. In *Chicago I. & L. Railway Co.* v. *Baugh, 175 Ind. 419; 94 N. E. Rep. 571,* it was said that the word "necessary" had no fixed meaning or character peculiar to itself; that it is flexible and relative; that it is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity; that it may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought and is a relative and com-

parative term depending on its application to the object sought, the character of and reasons for the convenience as public or private and its adoption to the public needs or public convenience, and especially is this true where it is based upon a condition or state of affairs in which the public are directly interested and as to which a public duty is imposed upon a public instrumentality as a railroad.

The learned vice-chancellor's interpretation of the idea of reasonableness seems to me to express exactly what the legislature must have had in mind when it provided that the work authorized should not unnecessarily interfere with travel. The limitation upon the power of the commissioners therefore is that in performing the work contemplated by the statute, and in formulating plans therefor, they must provide for the construction of the work in such way and manner as not unnecessarily to obstruct travel. If they have violated this limitation, then they have exceeded their authority, and if they have exceeded their authority, they cannot enforce their plans and methods of construction upon the complainant. The idea of what is reasonable under all the known circumstances must be kept before us. What would be reasonable in one place or under one set of circumstances might be the very opposite in another place and under other circumstances. Would it be reasonable or would it be a reasonable exercise of the right given to the commissioners to completely tear up the tracks of the complainant at the point in question and leave them torn up for a period of three months during the inclement weather of winter? The proposition of the defendant's answer was that the work would require the use of the street for a period not to exceed three months. We now know that the work occupied about eight months. Suppose that by ordinary diligence the work of constructing the sewer under the defendant's contracts were known beforehand to occupy the period of three months, and that the track of the complainant would have to remain torn up for that period, would that be a reasonably necessary obstruction to the public travel? If there were no method by which such an interruption could be avoided, it certainly would be an unreasonable obstruction; and this must have been in the contemplation of the legislature at the time it

was formulating the statute in question. In such an event it would, in my opinion, be the plain duty of the contractors and the sewerage commission at their own expense to so arrange their work as to avoid the interference. This argument leads to a decision of the point in favor of the complainants and justifies the interference of this court on either of two grounds, viz., the restraining of a continuing trespass, amounting to an irreparable injury, or the regulation of conflicting easements in the property of the public.

The contract between the sewerage commissioners and the contractors contains this covenant on the part of the contractors: "To make all provisions necessary to maintain and protect existing structures of whatever kind; to repair all damage done to such structures," and that "care shall be taken to avoid injury to gas and water pipes, sewers, drains and other structures," and that

"care shall be taken not to move without the consent of the engineer any sewers, drains, water or gas pipes or other structures, and in crossing these or in running parallel with or near them they shall be sustained securely in place until the work is completed. Whenever it is necessary to interfere with said structures the contractor shall maintain their respective services, and, if necessary for that purpose, shall lay temporary water, gas or other pipes."

There are other expressions of the same character, all of which are relied upon by the complainant as covenants inserted in the contract for its benefit. I do not think that these covenants were made for the benefit of the complainant, but were inserted for the security of the commissioners. There is nothing to indicate that it was the intention of the contractors or the sewer commissioners to make a contract for the benefit of third persons. These covenants come within the rule laid down in *Styles* v. *Long, 67 N. J. Law 413,* and *70 N. J. Law 301.* These expressions, while they cannot be made the basis of a decree, are useful in the case, however, for the purpose of showing not that the contract was one which could be taken advantage of by third parties, but rather that the sewerage commissioners did not contemplate any interference with the public travel.

I place my decision, however, squarely upon the somewhat peculiar use of the word "necessary." It is quite apparent from the testimony that methods might have been employed by the

contractors in the construction of the work which would have prevented much of the inconvenience that would arise from the interruption of travel by suspending the railway operations for a period as long as three months. As far as I can see, the statements of the complainant's witnesses on this point are not controverted. The engineers, on the part of the contractors, admit that some other plan might have been used, but object to it on the score of increased expense. Whether that consideration should affect the decision when we are dealing with the rights of the public I will not attempt to decide.

I will advise a decree directing that the actual cost of taking up the tracks, of laying temporary tracks and of restoring the situation after the finishing of the sewer, shall be paid by the contractors. If the amount cannot be agreed upon by counsel, I will refer the matter to a master to ascertain the same and report.

*Mr. J. Edward Ashmead,* for the appellants.

*Mr. Frank Bergen,* for the respondent, Public Service Railway Company.

*Mr. Adrian Riker,* for the Passaic valley sewerage commissioners.

PER CURIAM.

The decree is affirmed, with costs. We agree with the vice-chancellor's construction of the powers vested in the Passaic valley sewerage commissioners and his definition of the word "necessary." We express no opinion on the question whether the covenants in the contract between the sewerage commissioners and the contractors can avail the complainant.

*For affirmance*—GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—12.

*For reversal*—None.